IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MADAME HABYARIMANA, individually and for the estate of President of Rwanda, JUVENAL HABYARIMANA and MADAME NTARYAMIRA, individually and for the estate of President of Burundi, CYPRIEN NTARYAMIRA, | * * * * * * * * | 4:12-cv-00191 |
| Plaintiffs, | * * | |
| v. | * * | |
| PAUL KAGAME, PIERRE PROSPER, STEPHEN RAPP, ANN M. FIELDS, and STEVE NOAH, | * * * * | |
| Defendants. | * * * | ORDER |

Before the Court is Paul Kagame's ("Kagame") Motion to Dismiss, Stay or Transfer Action and to Amend Caption, Request for Judicial Notice, and Citation to Evidence in Support of the Entry of Sanctions against Plaintiffs' Counsel, filed September 25, 2012. Clerk's No. 21. On that same day, Ann M. Fields ("Fields") and Steve Noah ("Noah") joined in the Motion (hereinafter "Defendants' Motion"). Clerk's No. 23. Habyarimana and Ntaryamira (collectively "Plaintiffs") filed a timely resistance[1] on November 14, 2012.[2] Clerk's No. 34. Kagame replied

---

[1] The original deadline for Plaintiffs' resistance was October 12, 2012. Plaintiffs did not request an extension of this deadline until October 17, 2012. Clerk's No. 29. On November 5, 2012, the Court granted the requested extension and set November 14, 2012 as the new deadline for Plaintiffs' response. Clerk's No. 33.

[2] Plaintiffs concede that both Stephen Rapp and Pierre Prosper "must be dismissed for lack of service of process." Pls.' Mem. in Opp'n to Defs.' Mot. ("Pls.' Resistance Br.") at 4, 6–7. Accordingly, the Clerk of Court shall terminate them as Defendants in this lawsuit.

on November 20, 2012.³  Clerk's No. 36.  The matter is fully submitted.

## I. FACTUAL BACKGROUND

On April 6, 1994, two surface-to-air missiles shot down the airplane carrying Juvenal Habyarimana, Chief of State of Rwanda, and Cyprien Ntaryamira, Chief of State of Burundi killing them.  Am. Compl. (hereinafter "Complaint") (Clerk's No. 7) ¶¶ 7–8.  A genocide "target[ing] Tutsi and Hutu moderates" ensued.  *Id.* at 30.  Plaintiffs, the widows of the two heads of state, allege that Kagame is responsible for the assassination of their husbands.  *Id.* ¶¶ 9, 14–15.  They filed this lawsuit in the Southern District of Iowa seeking to hold Kagame liable under the Alien Tort Claims Act, 28 U.S.C. § 1350, the Torture Act, 18 U.S.C. § 2340A, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68, and various state and international laws.⁴  *See id.* ¶ 46.  Kagame, Fields, and Noah (collectively "Defendants") move the Court to dismiss the entire lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(2)–(6).  Defs.' Mot. ¶ 2.

## II. STANDARDS OF REVIEW

Defendants maintain that Rules 12(b)(2)–(6) provide independent bases for dismissing this action with respect to Kagame.  Defs.' Mot. ¶¶ 2, 3, 5.  With respect to Fields and Noah, Defendants argue that only Rules 12(b)(4)–(6) are applicable.  *Id.* ¶¶ 4–5.  For the reasons

---

³   Fields and Noah joined in Kagame's Reply on November 20, 2012.  Clerk's No. 37.

⁴   Virtually identical claims were the subject of Plaintiffs' lawsuit against Kagame in the United States District Court for the Western District of Oklahoma—*Habyarimana v. Kagame*, 821 F. Supp. 2d 1244 (W.D. Okla. 2011) (hereinafter "*Kagame I*").  *Compare* Am. Compl. (Clerk's No. 43) (W.D. Okla. Case No. 5:10-cv-00437) ¶ 29 *with* Compl. (Clerk's No. 7) (S.D. Iowa Case No. 4:12-cv-00191) ¶ 46.  The only difference is that in *Kagame I*, Plaintiffs claimed that Kagame's alleged crimes violated the laws of Oklahoma and Rwanda, while, in this case, they claim that Kagame's alleged wrongdoings violated the laws of Iowa.  *See id.*

outlined in § III of this Order, the Court has determined that the entire lawsuit should be dismissed pursuant to Rule 12(b)(6). Thus, the Court need not decide whether Rules 12(b)(2)–(5) afford relief.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In reviewing a complaint, a court must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences . . . in favor of the plaintiff." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

A viable complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 555 (alteration in original) (internal citations omitted). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

The Supreme Court, in *Iqbal*, described a "two-pronged approach" for evaluating complaints challenged under Rule 12(b)(6). *Iqbal*, 556 U.S. at 679. First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be

3

parsed for facial plausibility. *Id.*

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

The "parsing" process requires careful examination of the plaintiff's allegations, however, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.  Indeed, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Id.* at 597 (internal quotations and citations omitted).

A court will "draw on its judicial experience and common sense" when determining whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 679.  Thus, the Court may consider other, more likely explanations for the acts described in the complaint when determining whether the pleaded factual allegations give rise to a plausible entitlement to relief. *Id.* at 680.  But the Court must always be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [a court] must also take

account of [his or her] limited access to crucial information." *Braden*, 588 F.3d at 597.

## III. LAW AND ANALYSIS

Defendants claim that this lawsuit is subject to dismissal pursuant to Rule 12(b)(6) because: (1) "Kagame is immune from the jurisdiction of this Court under well-settled principles of head[]of[]state"; and (2) the Complaint contains "no allegation linking [Fields and Noah] . . . to the alleged transactions and occurrences . . . ." Defs.' Mot. ¶¶ 3–4.

### A. *Kagame*

The Court concludes that, for the reasons set forth in *Habyarimana v. Kagame*, 696 F.3d 1029 (10th Cir. 2012), Kagame, the current President of the Republic of Rwanda,[5] is immune from suit. In its opinion, the Tenth Circuit stated, in relevant part:

> In the words of Judge Wisdom: "The precedents are overwhelming. For more than 160 years American courts have consistently applied the doctrine of sovereign immunity when requested to do so by the executive branch. Moreover, they have done so with no further review of the executive's determination." *Spacil v. Crowe*, 489 F.2d 614, 617 (5th Cir. 1974) (Wisdom, J.). Of course, the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602–11, which addresses the question of a foreign state's entitlement to immunity, now super[s]edes many of those precedents to which Judge Wisdom referred: "After the enactment of the FSIA, the Act—and not the pre-existing common law—indisputably governs the determination of whether a foreign state is entitled to sovereign immunity." *Samantar v. Yousuf*, 130 S. Ct. 2278, 2285, 176 L. Ed. 2d 1047 (2010). But the FSIA does not alter common law precedents as they bear upon "the immunity of individual officials." *Id.* at 2289. The FSIA does not affect the "State Department's [historical] role in determinations regarding individual official immunity." *Id.* at 2291. And that role

---

[5] The Court takes judicial notice of the State Department's Suggestion of Immunity concerning Kagame issued in *Kagame I*. *See* Defs.' Mot. at 3–4 (requesting that the Court take judicial notice that "Kagame is the current head of state and duly-elected President of the . . . Republic of Rwanda"); Ex. 38 (containing the State Department's Suggestion of Immunity filed in *Kagame I*); *see also* Fed. R. Evid. 201(c)(2) ("The court must take judicial notice if a party requests it and the court is supplied with the necessary information."). Accordingly, the Clerk of Court shall change the caption of this lawsuit to reflect that Kagame is the Republic of Rwanda's current President.

is well established, despite the widows' contrary arguments.[6]

Simply stated, "[i]t is . . . not for the courts to deny an immunity which our government has seen fit to allow." *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35, 65 S. Ct. 530, 89 L. Ed. 729 (1945). We must accept the United States' suggestion that a foreign head of state is immune from suit—even for acts committed prior to assuming office—"as a conclusive determination by the political arm of the Government that the continued [exercise of jurisdiction] interferes with the proper conduct of our foreign relations." 5 *Ex Parte Republic of Peru*, 318 U.S. 578, 589, 63 S. Ct. 793, 87 L. Ed. 1014 (1943); *accord Ye v. Zemin*, 383 F.3d 620, 626 (7th Cir. 2004) ("[A] determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff."). Judge Wisdom best explained the "compelling reasons" for such a rule:

> Separation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy. And the degree to which granting or denying a claim of immunity may be important to foreign policy is a question on which the judiciary is particularly ill-equipped to second-guess the executive. The executive's institutional resources and expertise in foreign affairs far outstrip those of the judiciary. Perhaps more importantly, in the chess game that is diplomacy only the executive has a view of the entire board and an understanding of the relationship between isolated moves.

*Spacil*, 489 F.2d at 619 (internal citations omitted).

*Id.* at 1032–33. The Court agrees with the Tenth Circuit's reasoning, and, accordingly, dismisses all claims against Kagame because, as the head of state of a foreign nation, he is immune from suit.

## B. *Fields and Noah*

Fields's and Noah's alleged wrongdoing is that they participated in a conspiracy "to cover-up . . . Kagame's complicity in the extra-judicial murders of the two presidents . . .

---

[6] Thus, the Tenth Circuit rejected Plaintiffs' argument that following *Samantar v. Yousuf*, it was not required to defer to the State Department's Suggestion of Immunity concerning Kagame. *See* Brief of Plaintiffs-Appellants at 19–34, *Madame Habyarimana, et al. v. Kagame*, 696 F.3d 1029 (10th Cir. 2012) (No. 11-6315).

through the W[illiam] Penn University 'Paul Kagame Presidential Scholar's Program.'" Pls.' Mem. in Opp'n to Defs.' Mot. ("Pls.' Resistance Br.") at 2–3; *see also* Compl. at 2 (alleging, in the caption of the Complaint, that Fields and Noah "conspired to further cover-up . . . Kagame's crimes by knowingly and wilfully using systematic and continuous business relationships since 2007 . . . to build the deceptive facade described by a former co-conspirator and Rwandan Ambassador to the United States[, Dr. Theogene Rudasingwa]"). These allegations are insufficient to comply with Federal Rule of Civil Procedure 8's pleading requirements. *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (internal citation omitted)). Moreover, the Complaint simply does not contain sufficient "factual matter" to state a facially plausible claim for relief.[7] *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Whether Plaintiffs' Complaint "states a plausible claim for relief [is] . . . a context-specific task . . . requir[ing] the . . . [C]ourt to draw on its judicial experience and common sense." *See id.* Having completed this "context-specific task," the Court has determined that it cannot "draw the reasonable inference" that Fields's and Noah's involvement in administering the Paul Kagame Presidential Scholar's Program at William Penn University amounts to a conspiracy to cover-up

---

[7] Oddly, Plaintiffs' allegation regarding Fields's and Noah's involvement in the conspiracy to cover-up Kagame's alleged crimes appears in the caption of the Complaint. *See* Compl. at 2. None of the allegations in the body of the Complaint names Fields, Noah, or William Penn University as co-conspirators. *See generally* Compl. Moreover, only Count Eight speaks of a conspiracy to cover-up Kagame's alleged crimes, but fails to identify Fields, Noah, or William Penn University as co-conspirators. *See id.* ¶¶ 92–96. Indeed, in Count Eight, Plaintiffs simply claim that "un-named countries and co-conspirators" have been assisting Kagame in his efforts to cover-up his alleged wrongdoings. *See id.* ¶ 96.

Kagame's alleged crimes. *See id.* Therefore, the Court dismisses all claims against Fields and Noah.

C. *Sanctions*

Defendants petition the Court to impose sanctions on Plaintiffs' counsel, C. Peter Erlinder ("Erlinder"), pursuant to 28 U.S.C. § 1927,[8] claiming that he "vexatiously, wantonly and without cause has multiplied the proceedings by seeking to do an end run around the Oklahoma Court and the Suggestion of Immunity issued by the State Department." Defs.' Mot. at 42–43. Erlinder denies that his conduct calls for any sanctions, and, in turn, moves[9] that the Court sanction Defendants' counsel.[10] Pls.' Resistance Br. at 22–25. The Court has carefully evaluated all allegations of attorney misconduct in this lawsuit, and finds that no sanctions are warranted at this time.

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion (Clerk's No. 21) is GRANTED in part and DENIED in part. Specifically, all of Plaintiffs' claims in this lawsuit are dismissed as to all Defendants. *See supra* n.2 & § III. Additionally, any further filings in this lawsuit or in the

---

[8] Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[9] Plaintiffs' resistance may not serve as a vehicle for their motion for sanctions. *See* LR 7(e) ("A resistance to a motion may not include a separate motion or a cross-motion by the responding party. Any separate motion or cross-motion must be filed separately as a new motion."). For the purpose of this Order, however, the Court will overlook Plaintiffs' failure to comply with Local Rule 7(e).

[10] Specifically, the conduct complained of is the assertion that Erlinder has been disbarred by the International Criminal Tribunal for Rwanda. *See* Pls.' Resistance Br. § VII.

potential appeal of this Order shall reflect that Kagame is the Republic of Rwanda's current President.  *See supra* n.5.  Finally, at this time, the Court declines to impose any sanctions on either Plaintiffs' or Defendants' counsel.

    IT IS SO ORDERED.

    Dated this ___6th___ day of February, 2013.

_/s/ Robert W. Pratt_
ROBERT W. PRATT, Judge
U.S. DISTRICT COURT